The next argument is in the case of Pivonka v. Axelrod, 14-13 from 2008. I would like to begin as soon as you can be ready. Yes, thank you. Good morning. May it please the court, my name is Ramon Pizarro. I am the attorney for Mr. Kovach and Mr. Tonolini. This interference has to do with a very simple device. It's a pectator that collapses. But as we have explained in the briefs, this thing should never have really proceeded to the extent that it did. Initially, the junior party asked the Court of Appeals that it was the senior party. Therefore, I was entitled to advance under the presumption that it was allowed to be a senior party. In fact, it was not a senior party. And because of that, it had to show that it would prevail in the interference before the interference would even start. The administrative law judge in this case said, well, it was not entirely unreasonable for it to think that it was a senior party when in fact it was the junior party. But the decision as to whether it would call itself the junior party or the senior party was based on the teachings or the disclosures in its own applications. And therefore, it just not understood as to why it would not be totally unreasonable to be incorrect about that. So let me ask, so your whole argument here is based on the fact that you think that this did not satisfy what good cause standard and good regulation? I'm sorry? You're saying that it did not, what Axelrod came up with did not satisfy the good cause standard and the work we required to do? Well, for two reasons. Number one, to proceed with the interference. And number two, to allow Axelrod to submit new evidence. Because everything that was submitted in order to allow the interference to go forward was new evidence. It was affidavits and everything that was created after the show cause ordinance initially. What is the standard of review? That would be an abuse of discretion, I believe, or that the agencies did not follow its own rules. I don't understand your argument. Are you saying that there was no legitimate interference, that the declaration of an interference was legally deficient and therefore the entire proceeding is a nullity? No. What is your argument? Well, there's two arguments here. Number one, the obviousness issue that I'd like to address in a little bit. You keep talking about how they shouldn't have proceeded. I'm trying to understand, well, why not? Well, because they didn't meet their initial burden of showing that they would succeed on the interference. That they should have shown that they were up to this invention before, that they were, because they were a junior party, that they should have shown that they had actually a reduction in practice before Kavanka's constructive reduction in practice. And in their initial submissions, they did not have that at all. So you're saying the process function, they shouldn't have given them a second bite. That's true. That's true. If they got a second bite, it wouldn't have allowed it. So what should have happened? It should have been terminated in midstream? No, at the beginning. At the initial stages, the rule says that the judge is allowed to announce an interference, and for the purpose of getting them to show good cause as to why they should be allowed to either introduce new evidence or as to why perhaps there was some error in there. In the conclusion that they did not show that they could prevail on the interference based on their initial violence. And how does that entitle you to a reversal? Well, the thing is that the obviousness issues were raised, so it was sponsored by the board. But the board can look at these things, provided that they're properly before it. Secondly, I do believe that the obviousness analysis was not based on the claims. It was based on what... You seem to be saying they couldn't legitimately do any obviousness analysis. That's correct. Because as long as it was properly before it, I mean, it's almost like if the board could actually just look at any patent, grab it at random, just because it has the authority to take a second look at these things. It can just do that willy-nilly. The rules are set out so that... I don't understand why you're saying it's willy-nilly. I'm sorry. Or just at a random, just at its own, in a random fashion. Well, I don't understand that either. What do you mean random fashion? Well, without the evidence, without meeting the standards that's set out in the rules. If you don't follow the rules, then it can become like a random type of... If you don't stay within the rules, then you don't know where the boundaries are. Are you saying the issue wasn't before them or the evidence wasn't proper? That the issue was not properly before the board or the evidence with regard to that issue was not proper? Well, there was no evidence before the board because... Well, the issue had to have been before the board because that is one of the requirements that are set forth before the interference can even start. But they must show that... So you're saying that the issue was not properly before the board, is that what you're saying? Yes. I mean, well, the board was not, did not have the authority to keep going forward because there wasn't enough. They did not meet the, provide the evidence to show that they would succeed on the interference. Suppose we have a case where it's actually unclear who the senior party is and who the junior party is. But it's very clear that both inventions would have been obvious. As I understand your argument, the patent office would be absolutely precluded from making findings of obviousness in that case. Well, not the patent office, I think the board is... Well, I'm talking about the board. Okay. It's one of the initiators of the interference. Well, the board, I mean, the question is, as I read the rules, the board has authority to look at things so long as the rules are followed. I mean, the board can't, at least as far as I know... I thought the authority of the board to conduct interferences came from the statute. Right. Rule isn't the source of the jurisdiction of the board to adjudicate interferences. Now they have some procedural rules, and it may be that some of them, if they're not followed, could change the proceeding. But it's not a question of their authority. Their authority comes from the statute. Okay. And the case law. Right, right. And the case law says that before they can move forward, they need to show... They need to have... The person that's trying to provoke the interference needs to meet certain procedural safeguards to make sure that these things don't go on, that the patentees aren't exposed to harassment and that sort of thing. And that was not observed at all in this case. And then you get into the question of whether the obviousness was properly gauged. But those are two separate issues, I think. And as far as the obviousness issue, they did not focus on the claims at all at the beginning. Well, a lot of your... And you may be getting right to this, which is that a lot of what you're complaining about wasn't really understood. Sure. The obviousness is based on the fact that they used, for shorthand, for whatever purpose, the term farmland structure. Sure. Farmland shape. Right. Is there a pet carrier that one can draw from reading the claim, claim one, that is other than a farmland shape? I guess I'm not clear on why you're taking such issue with that. Well, because... Is that wrong, that the claims could lead you to something other than a farmland shape? Other than a farmland... Well, that's the thing. Just the definition of what is a farmland shape comes from looking at the invention. And that's clearly the hindsight. What is a farmland shape? If you go to a farm and you look at... Nowadays, when you look at what is a farm, you may see something that's dome-shaped. And so what is a farmland shape? And I did think... I've thought a lot about it. Every time I see a farm, is that a farmland shape? But the patterns and the application and this interference have lots of drawings. Yes. So is it really likely that the board was totally confused about what's covered by these two purported inventions? No, no, but I think in the terms of... It's not to me like you just don't like the way they articulated it in their opinion, which isn't a basis of reversal. We have all sorts of case laws saying we don't review opinions. We review judgments and final decisions. Well, the question of what is obvious... You're not entitled to a reversal because somebody was careless in the phraseology of an opinion. Well, the thing is that the phraseology should have shown that this... The claimed invention was... Even if I were to agree with you that the phraseology should have been different and better, how does that entitle you to reversal? Well, because the evidence that they use does not suggest making this kind of... The claimed invention. Even if... Because Dr. Shiner's testimony said, again, works backwards from what we had. And he doesn't say that somebody with ordinary skill in the art, there would be a suggestion to incorporate that 1 over 180 degree folding based on those things. And you can do it. But he doesn't say that if you start with fear... I read his testimony and it's suggesting that not only is it possible, but it's readily apparent. Because it's such a simple mechanical art. And the edges and separate portions of the side walls are well known in the art. Well, that it's readily apparent. But the question is, would you combine these two things? Would it be combinable? Would somebody with ordinary skill in the art go look at these boxes that have to be collapsed? They collapse by being torn apart. And then say, well, that... There you have a 180, more than 180 degree side panels. But they don't... The collapsing isn't done all with everything put together as it's called out in the claims. I still don't understand where the reversible error is other than in a poorly worded opinion. Other than... I mean, other than there's no teaching suggestion to make that... To combine those two... The references that they combined. That they just... Dr. Shiner said that you can do it based on... And he agreed that the description... That the blocker device would provide better path loads, would provide stronger structure. But he doesn't say that one ordinary skill in the art would take the box. Why not? If it works better in a completely clear, apparent way, why isn't that enough motivation right there? It's stronger. Well, if that's stronger, that's an end product. It doesn't tell you how to get there. Because the way they approach that, I mean, in any house... What he was saying was lacking the idea. I mean, what is it... What he was saying was that the idea of coming up with this, the idea of trying to... If you start the problem and you want greater strength and rigidity, are you saying that that was invented... No, no. ...so that he would have realized that he wanted more strength, rigidity? No, the pet carriers or any of these cages before they would... Like he, for example, would have straight up and down sides. Those things have... The sides would act as columns with the roof on top. The end panels do not do anything to cooperate with the roof panel in terms of stability. This claimed invention has the end panels that come up, and then they hold up the roof. Because at the second position, when it comes up over 180 degrees, it has a tendency to bias and open them up. But what do you think was lacking in the prior art? A motivation? Yes, a teaching suggestion motivation. Why is it an inherent motivation that the prior art product could be greatly improved, the idea made much stronger by the arrangement of the hinges and angles? Well, the combined, the connected, all the panels being connected the way they have and the function that they achieve that way, that, knowing, at least Heath and Minetti, both of those required that you tear them apart. They may have, before you can get there, they didn't show how you could do that. Their collapsing would have to, it requires tearing apart the entire box in terms of a pet carrier. So is what was novel here how to do it, or that it should be done? What is novel here is the arrangement of all these panels, arranged together with hinges to achieve something that can collapse and then be flipped open and held up with the end panels and in cooperation with the roof panels after it has been strung up. There's no, like I said, the roof panel in the, what was considered the roof panel in the Heath and Minetti invention were the top of the boxes and they were separated out in order to collapse. You said that before. Why don't you save the few seconds you have left for your comment. Thank you. Mr. Grossman? Yes. Good morning, may I please have the floor? My name is Steve Grossman. It's good to be here this morning. It's a pleasure to have Bill, my associate, with me. Your Honor, I'll begin with a point you made from the bench, which is that clearly the Patent Office has the authority by statute to negate this interference and what the appellant has been objecting to is the procedure that the USPTO Office used. One point with regards to all of those questions is, that may have been missed, is that there was never an objection to this procedure below. My opponent had clear opportunity to object to this argument that procedurally we did not satisfy the good cause standard and did not do so. And we pointed that out in our brief that his citation to the record, preserving that objection, was not directed to an objection to 41-202. My opponent raised a new argument in his reply brief that it was impossible to do so. As this Court knows very well, new arguments raised in a reply brief should be barred. So it is our position, regardless of all the questions, that this matter was never raised below and is not properly before this Court. But I think, I may have it wrong, but I understood the answer from the other side to be that if they disagreed with the order of interference to proceed, the only option available to them would then be to object to the appeal. Your Honor, no, I disagree with that. Under the provisions of the interference rules, specifically 41-121, my opponent could have brought any motion he desired at the time to challenge the Board's ruling that there was good cause and sufficient evidence to proceed. There was nothing blocking him from doing that. Under the interference procedures, again, 41-121, any miscellaneous motion could have been brought and the objection could have been made. The objection was not moved below. So I do not buy the argument that it was impossible to raise this matter before the Board. So is your whole response to Mr. Pissarro's first argument of the two main arguments, weight, weight in the story? Well, I have certainly, that's my principal argument. My second argument is that, as you pointed out, Your Honor, this was a procedural issue, not a substantive issue. The Patent Office was substantively empowered. Was there some case holding that violations of procedural rules in the PTO never had any consequences? No. The standard, Your Honor, is that the U.S. PTO's interpretations of its regulations is entitled to substantial deference. And this was a discretionary decision by the U.S. PTO. And under the Eli Lilly case, which we cited, which we actually did cite in our brief because it came up in the reply, an agency's interpretations of its own regulations is entitled to substantial deference. So? So in our view, the U.S. PTO's decision here and its discretion to go forward is entitled to deference. But even giving deference, we sometimes reverse. I understand that. But why is that not appropriate here? Why is it not appropriate? To reverse even after giving heavy deference to the PTO's application and interpretation of its own procedural rule. Because I think at its core, the U.S. PTO correctly decided those rules. The U.S. PTO, in its decision to allow me to produce additional evidence, was extremely mindful of the requirements of 41-202, which, to ensure harassment in an application for interference, of a junior party submitting a request for interference without evidence. And the U.S. PTO articulated in its ruling factually that they had changed the count, and therefore any evidence that I had previously provided would not have been relevant to the count. And number two, they indicated that they were mindful of harassment and they found that my request for senior party status was not only unreasonable. So I believe, substantively, with respect to the procedures, the U.S. PTO acted in accordance with the rules. And I believe they were correct. And they exercised sound discretion. In which case, you don't need any deference. That's right. You just need the merits. And I believe on the merits their decision was correct as well. But what I was getting to earlier was that this was never raised to the law. And the U.S. PTO was never made aware of this decision so that they could have addressed it. And now I do not believe it was properly explored. And then do you have a separate response on the obviousness? Yes, I do, Your Honor. The standard for review on the obviousness is whether or not there was substantial evidence in the record. According to our briefs, as we pointed out, the only evidence from the vantage point of one of ordinary skill in the art was provided by us, by Dr. Sheehan. He pointed out that given that the Beard reference which showed a box with hinges, as this bench just mentioned a few moments ago, in all the indicated locations was known, and that barn-like roofs were known with sloping walls, it would have been an ordinary expected matter for one of ordinary skill in the art to make the modification in angling the walls. Now, Judge Prost asked a question about the U.S. PTO's shorthand, about barn-like shape. The barn-like shape was the U.S. PTO's, I believe, accurate shorthand for the limitation of the claim that simply recited in more words than barn-like shape that the walls were angled inwardly. But, sir, the tour did not identify any prior art reference that disclosed the hinged connection between the first and second positions. Your Honor, I believe the exact placement of the hinges was present in the reference of Heath, and the Heath reference showed the exact same invention as... But not at more than 180 degrees. Yes, it did. Not in the position we're talking about in the invention. As a matter of fact, it did, Your Honor. The Heath invention showed the hinges all at an angled position. Is Heath a square at a right angle? No, Heath is... Heath is the one that... So, in answer to Judge Michael's question, the only evidence from the vantage point of one of ordinary skill in the art was provided by Dr. Sheena, who said that, given the beer reference that had straight walls, and given the Heath reference that showed angled walls, one of ordinary skill in the art would have predicted and expected that all of the advantages and the structural enhancements would have been obvious to one of ordinary skill in the art. That was undisputed. So, mindful of the standard of substantial evidence, I believe the Board had not only substantial evidence, they had undisputed evidence from the vantage point of one of ordinary skill in the art on the issue of obviousness. But ultimately, obviousness is meaningless. Ah, certainly. But the evidence... Certainly, it's factual and true, but the only evidence the Board had to reach that legal conclusion was provided by our side, by Dr. Sheena, that one of ordinary skill in the art would have considered an ordinary and predictable result. And they had no concrete... They had no evidence whatsoever to conflict or contrast or dispute the testimony of Dr. Sheena. And that's why I believe the decision below should be sustained on the obviousness of the question. Anything further? No, sir. Thank you. First of all, the procedural matter is not a simple... As I read it, my interpretation is that it's a jurisdictional matter, and that sort of thing, whether they can entertain something is a jurisdictional issue, and that can be raised at any time. Also, the procedure was that we, the patentee here, was not allowed to enter anything until after the Board had made its decision whether this thing was a good conservator at all. And at that point, it was... We were already way far into the... Why don't you put on an expert in regards to the LBC? Oh. Well, because Dr. Sheena's position was supportive of what we had argued, and that is that the panels, when they folded in, when they went from the less-than-90-degrees position to the over-90-degrees position, would create a more stable situation. It does produce a toggling effect, that once you go over that 90-degree position... Yeah, but the essence of his testimony is that he thought that one skilled in the art would have... That would have been obvious to one skilled. I think the essence of his testimony was that he went in ordinary skill in the art, couldn't make that, but the only reason they could make that was because Pivanka showed it. Pivanka came up with it. He said, of course. And he also said that, well, anybody with ordinary skill can make a barn-shaped structure with panels. Well, he didn't testify that he was relying on Pivanka. He cited two other references. Well, but... Heath and... I forget the name of the other. He wasn't saying, oh, I'm resting on Pivanka's disclosure. Come on. Well, Heath and Manetti were showing these slow roofs with a flat top. The barn-shaped could be made with a fabric structure, with an inflatable structure, and you could argue that they'd all collapse. So, I mean, that sort of broad definition of the invention, ignoring what the actual claim language was, I think is improper in that that would allow you to make anything. There's no question that the board has to follow the claim language. That's the bedrock of interference proceeding. The claim language gets reduced to a count, and then the count is the metric against which all the evidence is judged. And I think it's almost preposterous to suggest that the board didn't know that, and they didn't really look at the claim language, and they actually thought the invention was something other than what the claim language sets forth. But the references must meet the claim language. Of course. And so the thing is that Heath and Manetti, which are the cardboard boxes, do not meet the claim limitations because they don't fold the same way, and they're not... Yeah, but I thought that the argument on the other side, and indeed almost any reading of Dr. Sheehan's testimony, is that in view of those references, it would be very readily apparent exactly what would happen if you used this change in angle in a horn-shaped structure hinged on the sides. And if that's right, it seems to me that's entirely in line with KSR and lots of other law for that matter. You seem to be saying if it isn't explicitly shown, if every limitation isn't explicitly shown in one reference or another, there can never be obviousness. I'm not arguing for a rigid application of teaching suggestion motivation rule. I'm just saying that... No, even assuming they can be combined, you seem to say every limitation has to be shown in one or another prior reference. No, I'm not saying that. That would be a 102 argument. This is 103. The thing is that the reason that Heath and Manetti, the cardboard boxes, approached things the way they did was because they did not know how to collapse them. I would imagine they did not know how to collapse them because it would have been advantageous for them to not have to require people to separate the boxes out. All right. Thank you both. We'll take the appeal under review.